UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4|5|10
```

-----------------------------------X

MESSIAH ALI BEY,

                  Petitioner,           09 Civ. 8416

    -against-                       OPINION

WARDEN BAILEY,

                  Respondent.

-----------------------------------X

A P P E A R A N C E S:

        Pro Se

        MESSIAH ALI BEY
        55 West 116th Street, #310
        New York, NY   10026

        Attorneys for Respondent

        ROBERT T. JOHNSON
        District Attorney
        Bronx County
        198 East 161st Street
        Bronx, NY   10451
        By:  Nancy D. Killian, Esq.

**Sweet, D.J.**

Petitioner Messiah Ali Bey (the "Petitioner" or
"Bey") has moved under 28 U.S.C. § 2254 for a writ of
habeas corpus.  Upon the facts and conclusions set forth
below, the motion is denied.

The Petitioner's motion was marked fully
submitted on December 22, 2009.

**Prior Proceedings**

Between April 16, 2003 and June 2, 2005,
Petitioner possessed property in the form of real estate
located at 1117 Hoe Avenue in the Bronx, valued in excess
of three-thousand dollars.  On June 20, 2005, Petitioner
appeared before the Honorable John Byrne and pled guilty to
Criminal Possession of Stolen Property in the Third Degree
(Penal Law § 165.50) in exchange for five years of
probation, a one-thousand dollar fine, and a quitclaim deed
waiving Petitioner's rights to property located at 1117 Hoe
Avenue, Bronx, New York (Exhibit 1:  p. 3).[1]

---

[1] Citations to "Exhibit" refer to exhibits to the Memorandum of Law
submitted on December 22, 2009 by District Attorney Robert T. Johnson
in opposition to Bey's habeas corpus petition.

1

Petitioner agreed that he possessed the property with the intention to benefit or deprive its owner or to impede recovery by the owner (Exhibit 1:  p. 6-7). Petitioner conceded that he used fraudulent information to convey the property from the owners to himself and that the title to the property was not valid (Exhibit 1:  p. 10, 12).  Then, knowing the transfer would be invalid, he conveyed the property to "Good Service Corp.," a corporation owned by a pastor or preacher named John, by signing the documents in front of a gas station on Tremont Avenue (Exhibit 1:  p. 10-12).

Petitioner's counsel confirmed that the promised sentence was acceptable, and said, "I should also note for the record I am not sure if counsel mentioned it, but he is waiving his right to appeal this conviction.  After thorough consultation. . . ." (Exhibit 1:  p. 3).  The court, however, interrupted defense counsel to inform Petitioner of his right to be prosecuted by indictment, to testify and present witnesses before a Grand Jury, to be tried by a jury, and to be confronted by witnesses (Exhibit 1:  p. 4, 8-9).  The court also explained that the superior court information had the same effect as an indictment.

Petitioner confirmed that he understood (Exhibit 1: p. 4-
5). Finally, the court told Petitioner that his guilty
plea had the same effect as a conviction, and that by
pleading guilty to a felony he exposed himself to predicate
felony offender status in the future, which carried serious
consequences (Exhibit 1: p. 9). Petitioner responded
affirmatively when the court asked whether everything was
"clear" to him (Exhibit 1: p. 9).

Petitioner authorized his attorney to enter a
plea of guilty to Criminal Possession of Stolen Property in
the Third Degree, and waive his right to appeal (Exhibit 1:
p. 5). The court warned Petitioner that he would not be
permitted to withdraw his plea under any circumstances.
When asked if anyone threatened or forced him into taking
the plea, Petitioner responded, "No" (Exhibit 1: p. 7).
He also confirmed that no one made any promises to him
regarding his sentence, other than the prosecutor's offer.
Petitioner agreed that he was pleading guilty voluntarily,
without anyone forcing him to do so, because he believed it
was the right thing to do (Exhibit 1: p. 9). Petitioner
then pled guilty (Exhibit 1: p. 10, 12—13).

The Department of Probation prepared a presentence report ("PSR") on June 20, 2005. The report indicated the Petitioner exhibited a "pattern to engage in criminal behavior," as a multi-state offender, with six arrests and convictions (Exhibit 9: PSR 3-4). His convictions included Disorderly Conduct in 1978, Criminal Possession of a Weapon in the Second Degree in 1979, Theft and Trespassing in 1987, Invalid Use of a Credit Card in 1986, and Criminal Possession of a Controlled Substance in the Seventh Degree in 1989 (Exhibit 9: PSR 2).

The report also outlined details of the conviction at issue, stating that Petitioner transferred the right to 1117 Hoe Avenue from deceased owners Hipolito and Maria Bermudez to himself. Similarly, he also transferred the right to 1663 Unionport Road from deceased owner Elizabeth M. Cushing to himself. The properties were each valued at more than fifty-thousand dollars (Exhibit 9: PSR 3). The Department of Probation could not determine Petitioner's potential for a positive societal adjustment and recommended incarceration in a New York State correctional facility (Exhibit 9: PSR 5, 7; "Departmental Sentence Recommendation with Supporting Reasons").

4

On June 5, 2006, Petitioner appeared before
Justice Byrne for sentencing.  Defense counsel alluded to a
pro se application Petitioner made to withdraw his guilty
plea.  The Court stated that it was denying the motion.
Counsel explained that Petitioner felt as though his former
attorney did not listen to him and told him that pleading
guilty was the only way to get out of jail.  Petitioner
later stated that his guilty plea was made under "duress
and coercion" and that his first lawyer violated his
constitutional rights.

Defense counsel confirmed that the offered
sentence was five years of probation, a one-thousand dollar
fine, waiver of the right to appeal, and a quitclaim deed
to the property located at 1117 Hoe Avenue (Exhibit 5:  S.
5-6).  The court imposed the promised sentence and noted
that Petitioner waived his right to appeal as a part of the
plea agreement (Exhibit 5:  S. 6).

Petitioner then filed his direct appeal, arguing
that his waiver of the right to appeal was not enforceable
and that his sentence of probation was excessive.  This
claim was rejected by the Appellate Division without
opinion on June 11, 2009.

While the direct appeal was pending, a warrant
was ordered on June 18, 2008, upon Petitioner's failure to
abide by the terms of his probation.  Petitioner was
returned on the warrant on June 16, 2009 and on September
30, 2009 he was sentenced to one year of incarceration.  He
was incarcerated at Rikers Island with a projected release
date of January 25, 2010.  Petitioner did not appeal to the
Appellate Division.  He has, according to his current
representations, filed various state court proceedings to
which the District Attorney's Office was not a party and
which, again according to Petitioner, have not been
adjudicated by the state courts.

**The Claims Are Unexhausted**

Petitioner's claims include those attacking the
original judgment of conviction, upon which he as convicted
of criminal possession of stolen property and sentenced to
five years probation (hereinafter referred to as the
original claims); and those attacking the ruling that he
violated probation and his resultant sentence of one year
incarceration (hereinafter referred to as the violation of
probation claims).

6

Original Judgment Claims

Petitioner raised just one claim upon direct appeal: that his negotiated sentence of five years' probation should be modified in the interests of justice (with the antecedent claim that his appeal waiver was invalid). Despite his current allegations that his plea was coerced and that he was arrested illegally, he did not present these claims upon direct appeal. Therefore, the original judgment claims are unexhausted, but forfeited since Petitioner has no available state remedy.

A Petitioner seeking habeas relief is required to "exhaust[] the remedies available in the courts of the State" by "fairly present[ing]" his claims to "the highest state court from which a decision can be had." 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 510 (1982); Picard v. Connor, 404 U.S. 270, 275-77 (1971); Daye v. Att'y Gen. of New York, 696 F.2d 186, 190 n.3 (2d Cir. 1982)(en banc), cert. denied, 464 U.S. 1048 (1984). For a state court to have sufficient opportunity to consider the constitutional claim, Petitioner must raise the claim in state court as a

7

federal constitutional issue, not merely one of state law.
See Anderson v. Harless, 459 U.S. 4, 6 (1982).

The exhaustion requirement can be satisfied by
reliance on federal cases employing constitutional
analyses, state cases employing federal constitutional
analyses, a claim in terms so particular as to call to mind
a specific right protected by the Constitution, or a
pattern of facts well within the mainstream of
constitutional litigation. Daye, 696 F.2d at 194.
Petitioner has not satisfied any of the four exhaustion
methods set forth in Daye. As a result, his claims are
unexhausted.

Any claim regarding his arrest is also barred
from habeas review because Petitioner pleaded guilty, fully
admitting his possession of the stolen property, and
additionally waived his right to appeal. Where "a criminal
defendant has solemnly admitted in open court that he is in
fact guilty of the offense with which he is charged, he may
not thereafter raise independent claims relating to the
deprivation of constitutional rights that occurred prior to
the entry of the guilty plea." Tollett v. Henderson, 411
U.S. 258, 267 (1973); see United States v. Arango, 966 F.2d

8

64, 66 (2d Cir. 1992) (by pleading guilty, defendant waived his right to object to the constitutionality of the search of his van). Because Petitioner pleaded guilty, he may not now seek habeas corpus relief regarding the original judgment claims. See Chapman v. Vanzandt, No. 96 CIV. 6940, 1997 WL 375668, at *3 (S.D.N.Y. July 8, 1997) (holding that because petitioner pleaded guilty, he waived his habeas claim relating to his Fourth Amendment rights at issue prior to the entry of the plea).

### The Probation Violation Claim

Petitioner does not claim to have appealed the amended judgment which has resulted in his instant incarceration. Thus, any claim regarding the imposition of this amended sentence is also unexhausted for the reasons stated above.

### The Unexhausted Claims Can Be Addressed On the Merits For Purposes Of Denying The Writ

This Court can review Petitioner's unexhausted claim "on the merits," but only for the purpose of denying them. See 28 U.S.C. § 2254(b)(2) (federal district court

9

has the authority to deny a petition "on the merits,
notwithstanding the failure of an applicant to exhaust the
remedies available in the courts of the State").

        To the extent Petitioner argues that he was
arrested without a warrant, this contention must be
rejected, since this Court may not grant habeas corpus
relief regarding a Fourth Amendment claim where the
Petitioner was afforded an opportunity for a full and fair
litigation of the issue before the state courts. Stone v.
Powell, 428 U.S. 465, 480-81 (1976); Gates v. Henderson,
568 F.2d 830, 840 (2d Cir. 1977), cert. denied, 434 U.S.
1038 (1978)(New York's statutory procedure for litigating
Fourth Amendment claims is sufficient; thus, Stone
prohibits further review); see also Kuhlmann v. Wilson, 477
U.S.436, 446-47 (1986); Martinez v. Miller, No. 01 CIV.
2921, 2001 WL 1382586, at *1 (S.D.N.Y. Nov. 6, 2001)(Lynch,
J.). Here, Petitioner does not claim that he was denied
this opportunity. Thus, this Court may not grant habeas
corpus review of this Fourth Amendment claim that the
arrest was not based on probable cause.

        The Petitioner has also contended that the courts
have no jurisdiction over him because of his status as a

10

"Moorish-American National". However, the suggestion that Petitioner is entitled to ignore the laws of the State of New York by claiming membership in the "Moorish-American" nation is without merit and cannot be the basis for habeas relief. See, e.g., United States v. James, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders."); Allah El v. Dist. Att'y for Bronx County, No. 09 Civ. 8746, 2009 WL 3756331, at *1 (S.D.N.Y. Nov. 4, 2009) ("Petitioner's purported status as a Moorish-American citizen does not enable him to violate state and federal laws without consequence."); cf. Saabirah El v. City of New York, No. 00 Civ. 8979, 2002 WL 1482785, at *4 (S.D.N.Y. July 10, 2002) (status as a Moorish American does not affect obligation to pay taxes).

Additionally, the finding by the trial court that Petitioner's plea was knowingly and voluntarily entered cannot be assailed by Petitioner. The question whether a guilty plea has been knowingly and voluntarily entered is a mixed question of law and fact. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986), cert. dismissed, 479 U.S. 805 (1986); see Marshall v. Lonberger, 459 U.S.422, 431-32 (1983). In order to establish that a Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily,

11

the record should show that the Petitioner was competent to
proceed, that he was aware of the nature of the charges
against him, that he had a rational and factual
understanding of the proceedings against him, and that he
knew the nature of the constitutional protections he was
foregoing by entering the plea.  Matusiak, 786 F.2d at 543.
As the state plea court concluded, the record shows that
these constitutional protections were adhered to.

## Conclusion

Since Petitioner has not set forth entitlement to
habeas relief under the standards set forth in 28 U.S.C.
§ 2254, the motion is denied and the petition denied.

So ordered.

New York, NY
April / 4, 2010

ROBERT W. SWEET
U.S.D.J.

12